Eric FLOWERS *v.* STATE of Arkansas

CR 07-319                                          282 S.W.3d 767

Supreme Court of Arkansas
Opinion delivered April 10, 2008

*Robert L. Depper, Jr.,* for appellant.

*Dustin McDaniel,* Att'y Gen., by: *Leaann J. Irvin,* Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. On September 26, 2006, a Miller County jury found Flowers guilty of capital murder by committing or attempting to commit the felony of robbery, and that in the course of and in furtherance of robbery he caused the death of Obie Watson under circumstances manifesting extreme indifference to the value of human life. On appeal, Flowers argues that the trial court erred by denying his motion for a directed verdict and by allowing the testimony on the part of three State witnesses: Jason Green, Detective Marc Sillivan, and Detective Shawna Yonts. Flowers's conviction for capital murder under Ark. Code Ann. § 5-10-101(a)(1) was supported by substantial evidence, and the trial court did not err in its evidentiary rulings. Accordingly, we affirm Flowers's conviction.

The record reveals the following. On August 25, 2004, at approximately 11:00 p.m., Jason Green was riding his motorcycle on a street in Texarkana, when he observed a pickup truck in a ditch. Green stopped to render aid and called out, asking if the occupants were injured. A voice responded from the dark and told

Green "we are fine" and asked him not to call the police "because we've been drinking." Green asked once again if anyone was hurt and needed help, and the person again responded, saying everything was fine. Nevertheless, based on the nature of the responses, Green called 911 and reported the apparent accident. Green went home, got his own truck and returned to the scene of the accident. Green then used his headlights to illuminate the pickup in the ditch and called out to the occupants. There was no response so he approached and climbed into the bed of the wrecked truck and saw a man, later identified as Obie Watson, lying face down in the floorboard, with blood covering the passenger compartment. Officers from the Texarkana Police Department, responding to Green's earlier 911 call, arrived at the scene, and found Watson's body in the pickup truck.

After Watson was pronounced dead at the scene, the initial investigation revealed the back glass of his truck had been shattered. Officers found no skid marks, sliding marks, or any other indication of a cause of the accident. Evidence collected from Watson's truck included a brick found in the floorboard of the truck, shattered glass, and DNA samples. A gun and shell casings were later found near Watson's truck and fibers found in the hammer of the gun were determined to match fibers from nylon sacks containing wood that were in the bed of Watson's truck. Forensic tests of a bullet recovered from Watson's chest indicated that it was fired from the recovered gun. Lottery tickets were found inside Watson's truck and scattered along the ditch where Watson's truck stopped.

For his first point for reversal, Flowers argues that the trial court erred by denying his motion for a directed verdict. An appeal from a denial of a motion for a directed verdict is a challenge to the sufficiency of the evidence. *Woolbright v. State*, 357 Ark. 63, 160 S.W.3d 315 (2004). Reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict was supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence that is forceful evidence enough to compel a conclusion one way or the other beyond speculation or conjecture. *Benson v. State*, 357 Ark. 43, 160 S.W.3d 341 (2004). The reviewing court views the evidence in the light most favorable to the verdict, and considers only evidence that supports the verdict. *Clem v. State*, 351 Ark. 112, 117, 90 S.W.3d 428, 430 (2002).

Circumstantial evidence may constitute substantial evidence to support a conviction. *Ross v. State*, 346 Ark. 225, 57 S.W.3d 152 (2001). The longstanding rule in the use of circumstantial evidence is that, to be substantial, the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused. *Id*. The question of whether the circumstantial evidence excludes every other reasonable hypothesis consistent with innocence is for the jury to decide. *Id*. Upon review, this court must determine whether the jury resorted to speculation and conjecture in reaching its verdict. *Id*.

A person commits capital murder if acting alone or with one or more other persons, he or she commits or attempts to commit robbery "and in the course of and in furtherance of" robbery "or in immediate flight therefrom, he or she or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life." Ark. Code Ann. § 5-10-101(a)(1) (Repl. 2006).

■ Flowers specifically argues that the jury's verdict was based on speculation because there was no testimony that Watson had a wallet or anything else in his pocket when he was killed, nor was there evidence that the lottery tickets, found scattered some distance from Watson's truck, belonged to Watson. There was testimony that Watson regularly purchased lottery tickets with very particular numbers, and lottery tickets that matched these numbers were found along the ditch where Watson's truck was located and inside the truck itself. Watson's pant's pocket was turned inside out and investigators found neither a wallet nor any other identification on Watson's person. The store clerk who sold the lottery tickets testified that Watson had purchased the tickets the night he was killed. The clerk further averred that Flowers had told the clerk that Flowers would pay back money the clerk loaned Flowers as soon as he was able to perform a robbery. DNA profiles taken from inside Watson's truck matched Flowers's DNA profile, and on the night Watson was murdered Flowers was picked up by another witness who testified that Flowers told her that he shot and killed Watson because Watson had seen Flowers's face. Finally, a witness testified that Flowers had possession of a gun at the time of Watson's murder that was later established as the murder weapon, and told the owner of the gun where it could be found after Watson's murder. Based on the direct and circumstantial evidence

presented at trial, the jury's verdict was supported by substantial evidence without the need to resort to speculation and conjecture.[1]

For his second point for reversal, Flowers argues that the trial court erred by allowing Jason Green to testify regarding a person's voice and the person was unknown, unseen, and unidentified at the scene of the crime. The Arkansas Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ark. R. Evid. 801(c) (2007). This court has held that an out-of-court statement is not hearsay under Rule 801(c), where the statement is offered to show the basis for the witness's actions. *See Sanford v. State*, 331 Ark. 334, 962 S.W.2d 335 (1998); *Bliss v. State*, 282 Ark. 315, 668 S.W.2d 936 (1984).

Here, Jason Green's testimony — that a voice responded "Yes, we are fine. We are not hurt. We will be coming right up. Please do not call the police as we have been drinking" — explained why Green left the scene to get his truck so he could offer help and also why he called 911 for assistance. Because Green's testimony was provided in order to show his basis of action, the trial court did not err in overruling Flowers's hearsay objection.

For his third point for reversal, Flowers argues that the trial court erred in allowing Officer Sillivan's opinion testimony that the rear glass window of Watson's truck appeared to be broken from the outside. Flowers contends that "[a]t trial, there were no facts articulated by [ ] Sillivan that would permit him to give his opinion as to the direction from which the glass had been broken."

Under Ark. R. Evid. 701, a witness not testifying as an expert may provide testimony in the form of opinions and inferences if those opinions and inferences are rationally based on the perception of that witness and are helpful to a clear understanding

---

[1] Flowers also argues that the evidence was insufficient to support his conviction because there was no testimony that he killed Watson with premeditation or for pecuniary gain. However, the jury convicted Flowers for causing Watson's death in the furtherance of a robbery, not for a premeditated, deliberate killing. Pecuniary gain is an aggravating circumstance that a jury may use for consideration of whether to impose the death penalty under Ark. Code Ann. § 5-4-604 (Repl. 2006) — which was not imposed. Accordingly, the court does not address these arguments.

of the witness's testimony or a determination of a fact in issue. This court reviews a trial court's decision to allow lay opinion testimony under Rule 701 for abuse of discretion. *Bridges v. State*, 327 Ark. 392, 398, 938 S.W.2d 561, 564 (1997).

Our court held in *Robinson v. State*, 353 Ark. 372, 383, 108 S.W.3d 622, 628 (2003), that a trial court did not abuse its discretion when it allowed lay opinion testimony by an investigator regarding a victim's blood loss from a gunshot wound based on his experience as a homicide investigator. Similarly, in the case before us now, the trial court overruled Flowers's objection and allowed Sillivan to testify and give his lay opinion based on his work experience and observations. Sillivan testified that his opinion was that the truck's back glass window had been broken from the outside. He based his opinion on the shattered glass found inside Watson's truck and a brick found inside the truck. The circuit court ruled this testimony was rationally based on Sillivan's prior law enforcement experience, forensic training, and personal observation; we believe the circuit court was correct in doing so under Rule 701. Therefore, the trial court did not abuse its discretion.

For his final point, Flowers argues the trial court erred when it allowed Officer Shawna Yonts to provide expert testimony on the direction of blood spatters found inside Watson's truck. Whether a witness qualifies as an expert in a particular field is a matter within the trial court's discretion, and this court will not reverse such a decision absent an abuse of discretion. *See, e.g., Jackson v. State*, 359 Ark. 297, 302, 197 S.W.3d 468, 472 (2004). Ark. R. Evid. 702 provides the following:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

In *Farm Bureau Mutual Insurance Co. v. Foote*, 341 Ark. 105, 14 S.W.3d 512 (2000), this court adopted the rule from *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and held that trial courts must first determine whether an expert is proposing to testify to scientific knowledge that will assist the trier of fact to understand or determine a fact in issue. Such a determination will require an assessment of

whether the reasoning or methodology the testimony is based on is scientifically valid and whether it is applicable to the facts in issue. *Farm Bur. Mut. Ins. Co., supra.* This court has also adopted the subsequent Supreme Court decision in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), which determined that Rule 702 applies equally to all types of expert testimony and not simply to scientific expert testimony, and that they must be shown to be both reliable and relevant. *See Coca-Cola Bottling Co. v. Gill*, 352 Ark. 240, 100 S.W.3d 715 (2003).

Here, the trial court concluded that Yonts's specialized training in "blood-spatter analysis" provided sufficient basis to qualify her to give expert testimony. Further, the trial court stated that it was uncontradicted that Yonts's training provided her with "knowledge in this field that a person would receive that would enable them to qualify to testify and give their opinion in this field of expertise."

■ This court has held that "if some reasonable basis exists demonstrating that the witness has knowledge of the subject beyond that of ordinary knowledge, the evidence is admissible as expert testimony" under Rule 702. *Flowers v. State*, 362 Ark. 193, 210, 208 S.W.3d 113, 127 (2005). Because Yonts had received specialized training that would have provided her with more than "ordinary knowledge" in blood-spatter analysis, the trial court did not abuse its discretion in admitting Yonts's testimony as that of an expert witness.

The record has been reviewed for all objections, motions, and requests adversely decided against Flowers as required under Ark. Sup. Ct. R. 4-3(h). *See, e.g., White v. State*, 370 Ark. 284, 259 S.W.3d 410 (2007). We find no prejudicial error.