Derek SALES *v.* STATE of Arkansas

CR 07-1308                                                                289 S.W.3d 423

Supreme Court of Arkansas
Substituted opinion on denial of rehearing
delivered December 4, 2008

*Arkansas Public Defender Comm'n*, by: *Teri L. Chambers*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Deborah Nolan Gore*, Ass't Att'y Gen., for appellee.

J<span>IM</span> H<span>ANNAH</span>, Chief Justice. Derek Sales appeals his convictions for capital murder and aggravated robbery and his

respective sentences of death and life imprisonment. We find no error and affirm. Because Sales was sentenced to death and to life imprisonment, jurisdiction lies in this court under Arkansas Supreme Court Rule 1-2(a)(2).

The jury was presented with the following facts. Willie York was murdered in his home shortly after 11:30 p.m. on April 16, 2005. York ran his own small business of selling liquor out of his home. Bradley County is a dry county, and he sold beer by the can. His business was described by witnesses as "bootlegging." York used a cigar box as a cash register and kept the cigar box close to his person. Sales was aware of this, and he purchased several beers from York on the day of his murder. York also kept personal papers in the cigar box.

York suffered from advanced rheumatoid arthritis and needed assistance in caring for himself. He weighed 102 pounds, had little use of his hands, and could not walk. He spent most of his time in his living room where he had a bed and a recliner. While awake, he sat in his recliner. While there, he wished to be able to look outside his home, so he always kept the shades up until he was moved from his recliner and placed in bed for the night. He typically went to bed at 10:00 p.m., at the close of his business day.

Sales arrived at the York home on April 16 at about 1:00 p.m. He had been there often over the last year. That day, Sales asked York's wife Gracie if they would be gone that evening. Sales left the York home a couple of times that day but each time returned.

That night, York's family left the home at about 6:30 p.m. to attend a basketball tournament. York remained at home. Sales was present, and no other person was there with York when the family left.

The family kept track of how York was doing throughout that evening by phone calls and visits. His granddaughters left the tournament and brought him dinner about 9:00 p.m. Sales was there. His daughter Lisa visited York's home about 11:15 p.m. and stayed approximately fifteen minutes. Sales was there. At that time, York was in his recliner, and the window blinds were still up. When Lisa arrived, Sales was talking on the phone. Gracie York testified that her phone billings showed that Sales made phone calls to a woman in Pine Bluff. His girlfriend Shirley Klein, who lives in Pine Bluff, testified that Sales called her from York's home in the late evening of April 16. She specifically recalled speaking with

Sales on the night of April 16 to April 17. A clerk at the nearby Exxon station recalls Sales in the store when his shift started at about 11:30 p.m. New packages of cigarettes were found at the crime scene.

Shortly after Lisa's visit ended at about 11:30 p.m., she saw her nieces at the nearby Exxon station. She instructed them to go put York to bed. As they drove up to the house, they were surprised that they could not see him. York should have been sitting in his recliner because he had no way to move to the bed. The lights should have been on. A window shade had fallen from its place at the top of the window. They drove closer to the house, and through the window they saw a figure moving about inside. This frightened them, and they called York on their cell phones, but he did not answer. The granddaughters called 911 and then Lisa.

One of the granddaughters, Amanda York, recognized the figure in the house as Sales. Amanda honked the horn, but there was no response. Another granddaughter, Ebony York, also recognized Sales. Amanda reported that he moved to the back of the house, and then back to the front where he peered out the window. She saw his face at this time.

Lisa arrived and could see through the open window that York was not in his chair or his bed. She then saw Sales. She tapped on the window, but Sales did not respond. He was bent over something she could not see. Lisa ran back toward the Exxon station and found her cousin Ricky Hampton. He ran to the house and looked in the window to see Sales bent over something with his arms fully extended while calling out York's name. Hampton went to the back door but found it locked. He proceeded toward the front of the house. At about this time, Warren police arrived. Officer Tim Cox shined his flashlight into a window and saw a figure crouched as if trying to stay out of view. He also tried the back door. Upon hearing someone say "he's coming out the front door," Cox went around front. There he confronted Sales on the front porch. When someone said "he's dead," Sales bolted and Cox pursued. Cox tackled Sales, and by this time Ricky Hampton was present and helped Cox subdue Sales.

Warren police officer Robbie Ashcraft arrived and placed cuffs on Sales. Lisa shouted "I thought you were my Daddy's friend." According to Officer Jason Michaels, Sales responded with "something like 'he wasn't nothin to me.'" Michaels then removed Sales from the scene.

York was found lying on the floor with his head in a pool of blood under the recliner footrest. An ambulance was called, and York was pronounced dead at the scene. York was transported to a nearby funeral home and from there to the state crime lab, where an examination revealed that he died of three possible causes: strangulation, blunt force trauma to the head and chest, and a puncture of the jugular vein. A kitchen knife was found not far from where York lay. Testing revealed that blood on the knife matched York's blood.

When Sales was arrested, he had a large number of coins in his pockets. More coins were found under the seat in the car that was used to transport him to jail. The cigar box was found at the crime scene. It contained twenty-eight cents and no personal papers. A piece of paper containing York's niece's Medicaid number was found in Sales's property when he was processed at the Warren jail facility shortly after his arrest. York's daughter Sharon testified that the piece of paper had been kept in York's cigar box. A pack of cigarettes of the type smoked by York was also found on Sales's person. Blood was found on Sales's shoes, sock, and pants. Blood on the shoes and knife were tested and "the DNA profile that was obtained from the swab (blood taken from the knife) as well as the swab from the shoe was consistent with or matched the DNA profile that was obtained from the blood sample from York."

York's wife Gracie testified that York kept two wallets near him at all times, and that in one he had a $100 bill; however, no $100 bill was found in Sales's possession. Further, there was evidence that Sales was present when York said he would purchase his granddaughter new wheels for her car that would cost about $1000. As Sales points out in his reply brief, the evidence in this case did not make it clear that Sales knew how York would pay for them. Gracie testified that they had $1300 in cash in the home at that time that would be used for that purpose. The $1300 was in the living room under a scanner sitting atop the television. According to Gracie, so far as she knew, only she and York knew where the money was.

### Motion for Directed Verdict

Sales first argues that the circuit court erred in denying his motions for a directed verdict on both charges. A directed-verdict motion is a challenge to the sufficiency of the evidence. *Flowers v. State*, 373 Ark. 127, 282 S.W.3d 767 (2008). A challenge to the

sufficiency of the evidence asserts that the verdict was not supported by substantial evidence. *See id.* Substantial evidence is evidence of sufficient force and character that without resorting to speculation and conjecture compels with reasonable certainty a conclusion one way or the other. *Id.* We review the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Id.* We affirm where the record reveals that substantial evidence sustains the verdict. *See id.* Further, circumstantial evidence may constitute substantial evidence to support a conviction. *Ross v. State*, 346 Ark. 225, 57 S.W.3d 152 (2001). The longstanding rule in the use of circumstantial evidence is that, to be substantial, the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused. *Id.* The question of whether the circumstantial evidence excludes every other reasonable hypothesis consistent with innocence is for the jury to decide. *Id.* Upon review, this court must determine whether the jury resorted to speculation and conjecture in reaching its verdict. *Id.*

The jury was presented with evidence that York kept money in the cigar box, used it as a cash register in his business, kept important personal papers in it, and kept it close to his person. York's daughter Sharon identified the cigar box and testified that in the box he kept "bank statements and his employment papers and money." The cigar box was nearly empty. Exhibit 31 was a photograph of the open cigar box and revealed to the jury that it contained twenty-eight cents and nothing else. No personal papers of any kind were in the box. The slip of paper was found in Sales's property taken when he was booked. Sharon Thompson identified this as her daughter's Medicaid number, and she testified that this was one of the papers kept in the cigar box. A large number of coins consistent with what was kept in the cigar box was found in Sales's possession at the time of his arrest. Substantial evidence supports the jury's verdict that Sales committed aggravated robbery in that he robbed York of the contents of the cigar box and inflicted serious injury. *See* Ark. Code Ann. § 5-12-103 (Repl. 1997). The verdict of aggravated robbery is affirmed.

Substantial evidence also supports the jury's verdict of premeditated and deliberated capital murder under Arkansas Code Annotated section 5-10-101(a)(4) (Supp. 2003). Less than an hour prior to York's death, his daughter Lisa was in the house and testified that only York and Sales were present. Multiple pieces of

evidence place Sales at the scene of the crime at or near the time of York's death. Sales was identified by three separate witnesses as being in the house with York in the moments before the body was discovered. He was seen bending over the location of the body. He was heard calling out the victim's name. Blood was found on his ring and on his shoes. A knife with York's blood on it was found close by York's body. Sales's footprints were in the blood at the scene.

■ There is further substantial evidence that Sales committed felony capital murder. *See* Ark. Code Ann. § 5-10-101(a)(1) (Supp. 2003). Under felony capital murder, the State also had to show that in the course and in the furtherance of the robbery, Sales caused the death of York under circumstances manifesting extreme indifference to the value of human life. York suffered three mortal wounds including a stab to his throat, blunt force trauma to his head and chest, as well as strangulation. York was a frail, disabled man who could not defend himself. This constitutes substantial evidence that Sales killed York under circumstances manifesting extreme indifference to the value of human life. It also constitutes proof that Sales robbed York while armed with a deadly weapon and that he inflicted death in the course of that robbery.

### *Mistrial*

■ Sales moved for a mistrial, alleging that potential jurors were present and compromised when a law enforcement officer showed crime scene photographs to the family. Sales notes that the circuit court "did not rule on the motion." However, the circuit court later stated that the motion was overruled. A mistrial is a drastic remedy, to be employed only when an error is so prejudicial that justice cannot be served by continuing the trial, and when it cannot be cured by an instruction to the jury. *Johnson v. State*, 366 Ark. 8, 233 S.W.3d 123 (2006). The decision to grant a mistrial is within the sound discretion of the trial court and will not be overturned absent a showing of abuse or manifest prejudice to the appellant. *Id*.

Sales offers no evidence that he suffered prejudice. There is no proof offered that any person who saw the photographs was in the venire panel or served on the jury. There is no proof offered that seeing the photographs or seeing the family view and react to

the photographs would necessarily preclude the jurors from serving. Further, Sales offered no convincing authority for his argument. This court will not consider an argument in the absence of convincing authority. *Perroni v. State*, 358 Ark. 17, 186 S.W.3d 206 (2004).

### *Victim-Impact Evidence*

Sales argues that the circuit court erred in failing to preview and control the admission of victim-impact evidence and in failing to sua sponte admonish the jury or declare a mistrial when Sharon Thompson offered the following victim-impact testimony at trial:

> My mama had Lupus. She could not pick him up. That was our job. (Very loud.) That was my job to take care of my daddy, to bathe him, to clothe him and to comb his hair. Why? (Yelling) Why? Why did he take my daddy from me.
>
> MR. POTTS: I'm sorry, Your Honor, I object to —
>
> MR. DEEN: Sharon, thank you. State calls Angela Hampton.

There was no ruling on the objection. Thus, there is no decision of the circuit court on the objection subject to appellate review. *See Thomas v. State*, 370 Ark. 70, 238 S.W.3d 24 (2007). Sales argues that the circuit court should have acted without an objection or request by him. Thus, Sales asserts that the circuit court should have acted sua sponte on plain error. Some jurisdictions, particularly the federal courts, conduct plain-error review; however, in Arkansas, we do not. *See Buckley v. State*, 349 Ark. 53, 76 S.W.3d 825 (2002). However, in *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980), we recognized four exceptions to the plain-error rule that may be argued on appeal:

> These exceptions occur when (1) a trial court, in a death-penalty case, fails to bring to the jury's attention a matter essential to its consideration of the death penalty itself; (2) a trial court errs at a time when defense counsel has no knowledge of the error and thus no opportunity to object; (3) a trial court should intervene on its own motion to correct a serious error; and (4) the admission or exclusion of evidence affects a defendant's substantial rights.

*Thomas*, 370 Ark. at 75, 238 S.W.3d at 97. Presumably, Sales is relying on the third and fourth exceptions; however, he does not argue *Wicks*,

*supra*, or the exceptions. He provides no argument on the exceptions and provides no convincing authority for the assertion that the court should have previewed and controlled the admission of the victim-impact evidence. We will not consider an argument in the absence of convincing authority. *Perroni, supra.*

### Aggravating Circumstances

■ Sales also challenges the admission of evidence of aggravating circumstances. He argues that the circuit court erred in admitting evidence of pecuniary gain and avoiding or preventing arrest. At trial, the circuit court raised the question of whether there was evidence to support the aggravator on preventing or avoiding arrest. The state argued that there was evidence from which the jury could find that preventing or avoiding arrest was one of the motivations for the murder. Sales did raise the issue of whether that aggravator had to be shown by proof beyond a reasonable doubt; however, after discussion on the subject, counsel for Sales stated, "I have no problem with the aggravators as listed." Thus, the issue was raised by Sales but then waived. Waiver of the objection precludes appellate review of the issue. *See Dickerson v. State*, 363 Ark. 437, 214 S.W.3d 811 (2005). Further, there was no ruling on the objection. Failure to obtain a ruling on an issue at the trial court level precludes review on appeal. *Small v. State*, 371 Ark. 244, 264 S.W.3d 512 (2007).

■ However, Sales argues that this court should still review the evidence on the aggravating circumstances pursuant to Arkansas Rule of Appellate Procedure–Criminal 10. Under Rule 10(b)(vi), we review whether the evidence supports the jury's finding of a statutory aggravating circumstance or circumstances. It does. Sales challenges the admission of evidence of the aggravating circumstance of pecuniary gain and of avoiding or preventing arrest. We review the sufficiency of the evidence of aggravating circumstances in the light most favorable to the State to determine whether the trier of fact could have found the existence of the aggravating circumstance beyond a reasonable doubt. *Roberts v. State*, 352 Ark. 489, 102 S.W.3d 482 (2003). As to pecuniary gain, as already discussed in detail, the State offered substantial evidence to support the argument that Sales robbed York of the contents of the cigar box. As to avoiding or preventing arrest, the jury could have concluded from the evidence presented that York was killed

at least in part to preclude him from identifying Sales. *See Isom v. State*, 356 Ark. 156, 148 S.W.3d 257 (2004).

We have reviewed this case on the issues enumerated under Arkansas Rule of Appellate Procedure–Criminal 10 and find no error. Furthermore, the record has been reviewed in this case under Arkansas Supreme Court Rule 4-3(h), and no reversible error has been found. Accordingly, we affirm.