2011 Ark. 391

**Gregory HOLT, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 10–1164.**

Supreme Court of Arkansas.

Sept. 29, 2011.

500

Edward Glenn Adcock, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Valerie Glover Fortner, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice.

Appellant, Gregory Holt, was convicted of aggravated residential burglary and first-degree domestic battery. He received a sentence of life imprisonment on the aggravated residential burglary charge and a sentence of forty years on the first-degree domestic battery charge, with the sentences to run concurrently. He raises five arguments on appeal: (1) the trial court erred in denying his directed-verdict motion, because there was insufficient evidence to support his aggravated residential burglary conviction; (2) the trial court erred in permitting him to be shackled in front of the jury; (3) the sentences imposed were excessive, cruel, and unusual; (4) the prosecuting attorney improperly inflamed the jury be referencing Holt's Islamic faith during the sentencing phase; and (5) the prosecuting attorney misled the jury as to Holt's parole eligibility during closing arguments. We hold that there was no reversible error, and we affirm the judgment.

The facts are these. Connie Taylor and Greg Holt were involved in a tumultuous, on-again-off-again relationship that began in June of 2008. In the middle of April 2009, Taylor broke off the relationship with Holt. On the evening of April 30, 2009, Taylor arrived home from work around 6:00 or 6:30 and began trying to get in contact with Holt's friend, Angela Black, in order to make arrangements to return some of Holt's belongings that were still at her house. She testified that she called Black several times in order to make these arrangements. According to Taylor's testimony, she went to bed that night around 10:30 or 11:00.

At about 3:30 in the morning of May 1, 2009, Little Rock police officers, including Officer Cody Miller, responded to a call that an assault had just occurred at Connie Taylor's trailer in the Shackleford Mobile Home Park. Officer Miller testified at trial that when he arrived on the scene, he discovered the front door of Taylor's trailer open and Taylor sitting on her couch with a bloody towel pressed against her neck. He testified that upon entering the trailer, he discovered blood on the walls and the floor of the kitchen, living room, and hallway. Officer Miller also testified that when he asked Taylor what had happened, she told him that she had been stabbed by her ex-boyfriend, Gregory Holt. Officer Miller stated that, when he arrived on scene, the back door to the trailer was duct-taped shut and appeared not to have been opened.

In Officer Miller's written report about the incident, he wrote that Taylor told him that Holt had been at her house for several hours prior to the incident, but that he had showed up unexpectedly. According to Officer Miller's testimony, Holt told Taylor: "I'm going to kill you. If I can't have you, no one else can either." Taylor told Officer Miller that Holt then pulled a pair of gloves from his pocket, put them on, pulled out a large knife, and stabbed her twice in the chest and once in the neck. She also told Officer Miller that the only way she could get Holt to leave was to promise that she would not tell anyone about what had happened.

Connie Taylor testified at trial that she did not remember telling Officer Miller that Holt had been at her house for several hours prior to the incident. Instead, she testified that she remembered coming home from work that evening about 6:00 or 6:30, calling Black, and then going to bed around 10:30 or 11:00 that night. She admitted on cross-examination that she had been drinking from the time she arrived home that evening until the time she went to bed. At some point during the night, she awoke to find Holt sitting on her bed. She asked him what he was doing there, to which he responded: "I told you I could get in anytime I wanted to." According to her testimony, Holt then pulled his hands out from his pockets, and she saw that he had gloves on. Taylor testified that when she saw Holt reach for something from his pocket, she ran toward the kitchen. She testified that there was a scuffle, when she attempted to reach the front door. As she turned to run to the back door, Holt came up behind her and cut her throat with a knife. The struggle continued into the hallway, where Taylor testified that Holt stabbed her in the chest, and she fought with him for the knife. Eventually, she collapsed in the kitchen and began begging Holt to stop.

Finally, she said that Holt realized what had happened. She told him to take off his bloody clothes, hide the knife, and she would promise not to tell the police what had happened. Holt agreed to leave, and once he did, Taylor called the police.

Dr. John Dunn, the doctor who subsequently treated Taylor at Baptist Medical Center, testified that Taylor sustained stab wounds that were two to three inches deep—one to her neck, one at the base of her neck, and one just below her collarbone. Dr. Dunn added that Taylor also had defensive wounds to her hands. He confirmed that the toxicology report showed that Taylor's blood alcohol level was 0.21 after she was admitted to the hospital.

Angela Black testified that Taylor called several times during the evening hours of April 30, 2009. She stated that she eventually turned her phone off and went to sleep around 12:00 or 12:30 a.m. When she went to bed, she said that Holt was still at her house, asleep on her couch.

Holt himself testified at trial and stated that he was at Black's until about 2:00 in the morning on May 1, 2009, when he decided to go over to Taylor's trailer. He stated that he knocked on her front door, but when there was no answer, he tried the front door, and it opened. When he walked inside, he noticed that Taylor was asleep on the couch. He testified that once Taylor woke up, he began to get a sense that "something was about to go down," so he grabbed a butcher knife from a kitchen drawer. Holt does not dispute that he stabbed Taylor, but instead he argues that he was defending himself after Taylor rushed at him with her hand in her purse. He admitted that he brought gloves with him to Taylor's trailer and that he put them on when he felt like the situation was going "south." He also ad-

mitted to coming back to Taylor's trailer after the police had left in order to "clean up" by removing the blood stained carpet and his phone numbers from Taylor's phone.

On June 17, 2009, Holt was charged in a felony information with one count of aggravated residential burglary and one count of domestic battery in the first degree. He was tried before a jury on June 2 and 3, 2010, and the jury returned a verdict of guilty on both counts. He was sentenced as already recounted in this opinion.

## I. *Sufficiency of the Evidence*

For his first point on appeal, Holt challenges the sufficiency of the evidence supporting his aggravated residential burglary conviction on the basis that the State failed to prove that first, he entered or remained unlawfully in Taylor's residence, and secondly, he entered with the intent to commit an offense punishable by imprisonment. A person commits residential burglary if he or she enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing in that structure any offense punishable by imprisonment. Ark.Code Ann. § 5–39–201 (Repl.2006). A person commits aggravated residential burglary, if he or she commits residential burglary and he or she (1) is armed with a deadly weapon or represents by word or conduct that he or she is armed with a deadly weapon; or (2) inflicts or attempts to inflict death or serious physical injury upon another person. Ark.Code Ann. § 5–39–204 (2007).

This court has held that a motion for directed verdict is a challenge to the sufficiency of the evidence. *Cantrell v. State,* 2009 Ark. 456, 343 S.W.3d 591. A challenge to the sufficiency of the evidence is an assertion that the jury verdict was not supported by substantial evidence.

*Sales v. State,* 374 Ark. 222, 289 S.W.3d 423 (2008). We have held that substantial evidence is evidence that is forceful enough to compel a conclusion one way or the other beyond speculation or conjecture. *Flowers v. State,* 373 Ark. 127, 282 S.W.3d 767 (2008). On review, the appellate court views the evidence in the light most favorable to the verdict and considers only evidence that supports the verdict. *Id.* Matters such as evaluating a witness's credibility and resolving inconsistencies in the evidence are issues for the jury to resolve and not the court. *Brown v. State,* 374 Ark. 341, 288 S.W.3d 226 (2008).

The first step in our analysis of the sufficiency of the State's evidence is to examine Holt's motion for a directed verdict. At the close of the State's case-in-chief, Holt's counsel moved as follows:

> We would move for a directed verdict with regard to the aggravated residential burglary on the ground—on the ground that there is no evidence that the—that, you know, that the evidence is equivocal and not of—not dispositive on the question that he entered or remained unlawfully in the residence of Connie Taylor or that he was armed with a deadly weapon. There's no evidence as to the weapon itself or that he attempted to inflict death or serious physical injury.

Holt's counsel renewed his motion at the conclusion of his case-in-chief, adding only that Holt was privileged or licensed to be in Taylor's residence.

Our reading of section 5–39–201, the residential-burglary statute, is that it encompasses two separate and distinct elements, the first being *illegal* entering or remaining in the residence and then, second, having the *purpose* to commit a felony in that residence. *See Norton v. State,* 271 Ark. 451, 609 S.W.2d 1 (1980). Section 5–

39-204 adds the elements for aggravated residential burglary of armed with a deadly weapon or, alternatively, the infliction or attempted infliction of death or serious physical injury. Thus, when Holt made his motion for directed verdict, he needed to address both the absence of proof in connection with an illegal entry and the elements of aggravated residential burglary as well as the absence of proof that shows entry with a purpose to commit a felony in order to preserve all issues for our review. His motion, however, only addresses the element of illegally entering or remaining and the additional elements required for aggravated residential burglary. The motion does not address the State's failure to prove that he entered *with the purpose to commit a felony*, which is an essential element of residential burglary.

Rule 33.1 of the Arkansas Rules of Criminal Procedure provides that "[a] motion for directed verdict shall state the specific grounds therefor." Rule 33.1(c) further provides that "[a] motion for directed verdict . . . must specify the respect in which the evidence is deficient." This court has held that Rule 33.1 is to be strictly construed. *See, e.g., Carey v. State*, 365 Ark. 379, 230 S.W.3d 553 (2006). Accordingly, in order to preserve a challenge to the sufficiency of the evidence, an appellant must make a specific motion for a directed verdict, both at the close of the State's evidence and at the end of all the evidence, that advises the trial court of the exact element of the crime that the State

has failed to prove. *Id.* The reason underlying our requirement that specific grounds be stated and that the absent proof be pinpointed is that it gives the trial court the option of either granting the motion, or, if justice requires, allowing the State to reopen its case and supply the missing proof. *Pratt v. State*, 359 Ark. 16, 194 S.W.3d 183 (2004).

Moreover, where an appellant argues on appeal certain grounds for a directed verdict that were not raised to the trial court, the appellate court limits its review to those grounds that were presented to the trial court. *Tillman v. State*, 364 Ark. 143, 217 S.W.3d 773 (2005). In the instant case, because Holt did not specifically challenge the State's evidence concerning the alleged lack of purpose to commit a felony in his directed-verdict motion, but merely challenged the absence of proof of unlawful entry and the additional elements necessary for aggravated residential burglary, the argument he makes on appeal regarding the purpose element is barred.

Holt did, however, preserve his argument concerning the unlawful-entry element, and we hold that the State offered substantial evidence of this element.[1] The evidence showed that Taylor went to bed that night around 10:30 or 11:00 and remembered locking the front door of her trailer. She testified that although the door was locked, the lock on the mobile home door was easy to "jiggle" open. She also testified that Holt had broken into her trailer before by entering through the

1. Holt also adequately preserved his argument before the trial court concerning the additional elements necessary to show aggravated residential burglary. However, Holt makes no argument on appeal concerning the State's failure to prove that he was armed with a deadly weapon or that he inflicted or intended to inflict death or serious physical injury, which are elements of aggravated residential burglary. Because he fails to raise these arguments on appeal, they are considered abandoned. *See State v. Grisby*, 370 Ark. 66, 257 S.W.3d 104 (2007). What Holt does argue on appeal is the purpose element for residential burglary, but as already noted in this opinion, that argument was not part of his directed-verdict motion and is not preserved.

back door, which is why the back door was now taped shut. While Taylor admitted to calling Black's residence several times that evening, she testified that it was merely to make arrangements for Holt to get his things. Holt testified that he went over to Taylor's trailer in the early morning hours of May 1, 2009, and that Taylor was asleep on her couch when he entered. The evidence further showed that Holt pulled something from his pocket and a struggle ensued, during which Holt stabbed Taylor several times. The jury could have easily concluded from this evidence that Holt entered unlawfully and that ₉Taylor did not invite Holt to come over at that time. Even if the jury believed that Taylor did extend an invitation to Holt, the jury just as easily could have determined that her invitation certainly was not so extensive as to include entry in the middle of the night while she was asleep.

Furthermore, the residential-burglary statute clearly contemplates situations where the defendant enters unlawfully or *remains* unlawfully. *See* Ark.Code Ann. § 5–39–201(a)(1). Even if the jury believed Holt's testimony that he was invited over that night by Taylor, he certainly was not privileged to remain there once he began telling Taylor "I told you I could get in anytime I wanted to" and "if I can't have you, no one can" and stabbing her. *See Young v. State,* 371 Ark. 393, 266 S.W.3d 744 (2007) (finding substantial evidence supported the defendant's conviction for residential burglary where the defendant was licensed or privileged to enter the victim's residence, but "was certainly not licensed or privileged to remain there after he began stabbing the owner and removing his property.").

We conclude that the trial court correctly denied Holt's directed-verdict motion as there was substantial evidence to support a finding that Holt unlawfully entered or remained in the trailer.

## II. *Use of Restraints during Trial*

Holt's second argument for reversal is that the trial court abused its discretion by permitting him to be shackled in the presence of the jury during the course of the trial.

On the first day of the trial, June 2, 2010, the issue was raised concerning the use of shackles on Holt in the presence of the jury. A review of the record reveals that, prior to the ₁₀trial, Holt had written threatening letters to members of the Little Rock Police Department and the Pulaski County Detention Facility. Specifically, in a letter addressed to Randy Morgan, Chief of Detention at the Pulaski County Detention Facility, and dated April 19, 2010, Holt advised Chief Morgan that "should my trial go south, I intend to wage jihad against any court personnel, detectives, adverse witnesses, and will do whatever it takes to get these individuals, as Allah is my witness. It would behoove you to keep the [Special Emergency Response Team] S.E.R.T Team in place as a buffer against any acts and to keep order should a retaliatory strike become imminent." Holt concluded his letter to Chief Morgan by saying, "Your attention in this matter is greatly appreciated and could save lives."

Additionally, Holt sent a letter dated May 17, 2010, to Detective Damon Whitener at the Little Rock Police Department, whom he addressed as "ka[f]fir [2] pig," asking that Allah grant him the highest level of paradise "should [he] die waging jihad in this case." Holt concluded this letter by

---

**2.** "Kaffir" is a derivative of the Arabic word "kafir" meaning "infidel." *Webster's New In-*

*ternational Dictionary* 1230 (3d ed.2002).

calling for "Death to the ka[f]fir!" and "Death to America!"

In his brief on appeal, Holt recognizes that he "acted like a complete fool in the weeks and months preceding the trial, writing letters that raised legitimate concerns for security in the courtroom." He contends, nevertheless, that the trial court erred by permitting him to be shackled in the presence of the jury, because the court failed to make any sort of factual findings justifying the use of shackles. He argues that any discretionary determination by the trial judge that circumstances warranted shackling must reflect particular concerns related to that specific defendant such as security needs.

The United States Supreme Court has considered the issue of whether the use of restraints in some cases violates the Federal Constitution. In *Deck v. Missouri*, 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005), *abrogated on other grounds by Fry v. Pliler*, 551 U.S. 112, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007), the Court concluded that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck*, 544 U.S. at 629, 125 S.Ct. 2007. The Court, in *Deck*, recognized the "need to restrain dangerous defendants to prevent courtroom attacks [and] . . . to give trial courts latitude in making individualized security determinations." *Id.* at 632, 125 S.Ct. 2007.

This court has held that a trial court may take such steps as are reasonably necessary to maintain order in the courtroom, especially in situations where the criminal defendant has engaged in disruptive behavior, attempted escape, or is charged with violent felonies. *Williams v. State*, 347 Ark. 728, 67 S.W.3d 548 (2002).

In fact, this court has concluded that restraints are not per se prejudicial, and that a defendant must affirmatively demonstrate prejudice. *Id.* We will not presume prejudice when there is nothing in the record to indicate what impression may have been made on the jurors or where the appellant did not offer any proof of prejudice. *Id.*

In *Williams*, this court determined that the trial court did not abuse its discretion in permitting the defendant to be shackled in the presence of the jury where he had a long criminal past; he was currently on trial for capital murder, aggravated robbery, theft, and escape; and he threatened and taunted victims at a previous trial, which resulted in an altercation that required officers to carry the defendant from the courtroom. *Williams,* 347 Ark. at 747, 67 S.W.3d at 560. The court added that "[i]t would be difficult to imagine a criminal defendant that would better fit the definition of a high-risk defendant" and concluded that, in this situation, the restraints were necessary to maintain order in the courtroom. *Id.* at 747–48, 67 S.W.3d at 560.

In the case before us, it is evident from a review of the discussion between the trial judge and counsel that the trial judge authorized Holt to be shackled at the ankles for security purposes based on his letters and threats. At the beginning of the colloquy with counsel, the trial judge made the statement that "if the Bailiff thinks he needs the security, I'm going to let him have it." The prosecuting attorney then suggested the use of a shocker belt that could be worn under Holt's clothing as opposed to the visible shackles. This suggestion was not pursued.

Defense counsel, while recognizing that Holt had made overt threats and that his letters were "stupid," objected to the use

of visible shackles, arguing that this tells the jury to add years to the sentence. The trial judge then questioned the bailiff about his thoughts on the need for restraints for security purposes. The bailiff responded that this "decision was made by both parties ... They insisted upon the shackles." He concluded that "we'll need to have the ankle shackles," but ultimately deferred the decision to require shackles to the trial judge. The trial judge next decided, based on the bailiff's recommendation, that Holt's handcuffs could be removed, but that he was to remain shackled at the ankles. At the conclusion of this discussion, the prosecuting attorney moved to enter into evidence the two threatening letters written by Holt. He went on to ask the trial judge if his decision to have Holt shackled at the ⌊13ankles was based on those letters and the threats from the defendant, to which the court responded in the affirmative.

Like the defendant in *Williams*, Holt too had a long criminal past, including convictions for terroristic threatening, threatening to inflict bodily harm on the family of the President, and domestic battery against the victim in the instant case, Connie Taylor. The charges against Holt were for aggravated residential burglary and first-degree domestic battery, both of which are violent felonies. Furthermore, Holt made overt threats against law-enforcement officers, adverse witnesses, and court personnel prior to his trial. It is clear to this court that the trial judge required the use of restraints based on Holt's threats in order to maintain order and security in the courtroom and that he was justified in doing so.

We conclude that the trial court did not abuse its discretion as the restraints were reasonably necessary to maintain order and security in the courtroom. *See Williams v. State, supra.*

## III. *Cruel and Unusual Punishment*

■ For his third point on appeal, Holt claims that his sentences were disproportionate to his crimes and amounted to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. He adds that although Arkansas courts generally uphold sentences that fall within statutory limits, courts will conduct proportionality reviews under certain circumstances where the punishment results from passion and prejudice, as he maintains is the case here. He urges this court on appeal to consider his final three points in conjunction with one another. He asserts that the following facts support the conclusion that his sentences were the result of passion and prejudice: (1) he was shackled in ⌊14the presence of the jury throughout the trial; (2) the prosecuting attorney inflamed the jury by reading into evidence letters written by the defendant, which referenced his Islamic faith, during sentencing; and (3) the prosecuting attorney misstated the facts regarding Holt's parole eligibility during his closing statement.

■ The State is correct that this argument challenging Holt's sentences as cruel and unusual is not preserved for our review. The reason for this is that Holt failed to object to his sentence before the circuit court. A defendant who makes no objection at the time the sentence is imposed has no standing to complain about it on appeal. *Brown v. State,* 374 Ark. 324, 287 S.W.3d 587 (2008). Even constitutional arguments will not be addressed when raised for the first time on appeal. *Id.* We decline to address this point.

## IV. *Islamic Faith References during Sentencing*

■ Holt next urges this court to reverse because the prosecuting attorney im-

properly inflamed the jury during the sentencing phase when he read into evidence letters written by Holt which referred to his Islamic faith. Holt maintains that these constant references to his faith, when viewed in light of "today's highly-charged, anti-Islamic emotional milieu" and the fact that he was shackled throughout the entire trial, resulted in a disproportionate sentence that was the product of juror passion and prejudice.

 Similar to the last point, Holt failed to raise any objection to the trial court concerning the introduction of the letters. Again, the law is well settled that to preserve an issue for appeal a defendant must object at the first opportunity. *Pyle v. State,* 340 Ark. 53, 8 S.W.3d 491 (2000). A party who does not object to the introduction of evidence at the first opportunity waives such argument on appeal. *Id.* Thus, Holt's failure to object to the introduction of his letters in any fashion or raise any argument in connection with the references in those letters to his Islamic faith bars this court from considering this argument on appeal.

### V. *Parole Eligibility*

 Finally, Holt claims that the prosecuting attorney misstated the facts regarding his parole eligibility during the closing statement at the end of the sentencing phase by informing the jury that Holt would be parole eligible after serving one-fourth of the time he was given. Holt contends that given the fact that aggravated residential burglary is a Y felony, the statement by the prosecuting attorney was incorrect. He asserts that this misstatement of the law, combined with the other factors previously mentioned—the shackles, the presence of the S.E.R.T. team, and the references to his Islamic faith—resulted in a disproportionate sentence.

 This argument too is not preserved for our review, as Holt failed to object to the prosecution's closing argument at trial. An objection to any alleged prejudice caused by an improper closing argument must be made at trial. *See, e.g., Smith v. State,* 2009 Ark. 453, 343 S.W.3d 319. Therefore, we also decline to address this point.

The record in this case has been examined for reversible error pursuant to Arkansas Supreme Court Rule 4-3(i), and none has been found.

Affirmed.