Nina Sue MATTHEWS *v.* STATE of Arkansas

CR 96-415                                    938 S.W.2d 545

Supreme Court of Arkansas
Opinion delivered January 21, 1997

*Paul Johnson,* for appellant.

*Winston Bryant,* Att'y Gen., by: *David R. Raupp,* Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This is an appeal from a judgment of conviction for capital murder for which appellant Nina Sue Matthews received a sentence of life imprisonment without parole. She urges two points for reversal: (1) the trial court erred in allowing the State's rebuttal witness, Dr. Mallory, to testify as to the legal standard for criminal insanity; and (2) the trial court erred in allowing Matthews's custodial statements into evidence. We find no error, and we affirm.

The salient facts are garnered from trial testimony. Two "911" calls were made on December 25, 1993, in Little Rock concerning a shooting at the Matthews residence on Shackleford Road — one by Nina Sue Matthews herself and one by her daughter Kimberly Dill. Officer Marcus Paxton of the Little Rock Police Department was dispatched to that residence and testified that when he arrived on the scene, he observed another officer leading Matthews, who was upset and sobbing, from the home. Inside the residence, he found the victim, David Matthews, who was the husband of Nina Sue Matthews, sitting in a recliner with his legs crossed and a pistol in his right hand. He had been shot several times and was dead. Officer Paxton approached Nina Sue Matthews, who was sitting in the back seat of a Little Rock police car with the door open. He could tell Matthews had

been drinking alcohol. The police officer asked her if she was present when the shooting took place, and she responded that she was and stated that it was her daughter's fault, that the victim had a million dollar life insurance policy, and that "she wasn't going to say another word."

Dr. Frank Peretti, a forensic pathologist and medical examiner with the State Crime Lab, testified that he performed the autopsy on the victim. He testified that David Matthews had been shot three times in the chest, once in the left temple, and three times in the face with a small caliber gun. He testified that the victim's blood-alcohol content was .16 percent.

The State next called Little Rock Police Detective Rebecca Junkins as a witness. Matthews's counsel objected to the introduction of some of Matthews's statements made to Detective Junkins. The prosecuting attorney urged that the statements were spontaneous and suggested that an *in camera* hearing be held. The trial court responded, "Go ahead," which was a reference to continuing the trial. The testimony continued in the presence of the jury. No request for a ruling on the objection was made by Matthews's counsel. Nor was a request made for a hearing in chambers for the trial court to determine the voluntariness of the statements pursuant to Ark. Code Ann. § 16-89-107(b)(1) (1987), and *Jackson v. Denno*, 378 U.S. 368 (1964).

Detective Junkins testified that she placed bags over the hands of Nina Sue Matthews in preparation for a gunshot-residue test. Detective Junkins added that Matthews "rambled" in her conversation. The detective testified that Matthews asked her why she was not allowed to go home. Matthews then began describing sex games with her husband to Detective Junkins and at one point stopped and said, "Oh, my God. Oh, my God. I must have shot him."

Barbara Polite, a crime-scene specialist for the Little Rock Police Department, testified that she examined the crime scene. Matthews also told Polite about certain sexual activities with her husband, including wearing spurs and acting like they were shooting each other with unloaded guns. She then said, "Oh, my

God. . . . The gun must have been loaded." No objection was made by Matthews's counsel to this statement.

There was also testimony from Matthews's daughter, Kimberly Dill, that both Matthews and the victim had drinking problems. On Christmas Eve, the day before the killing, Matthews had been abusive to one of Dill's children, and she and her family had left. Dill related that in visiting with her father later that day, he told her that he was going to leave Nina Sue Matthews. A second daughter, Lisa Matthews, testified that her mother told her that Dill had killed their father. There was also testimony from insurance representatives that Nina Sue Matthews stood to gain over $1 million from insurance policies and a pension plan as a result of David Matthews's death.

In her defense, Matthews denied killing her husband for the insurance money. She asserted the affirmative defense of mental disease or defect and testified that she had received treatment for alcoholism and other disorders for 10 to 15 years. She admitted to "clicking" the gun at her husband, thinking it was empty, but then on cross-examination she stated that she heard a terrible noise after she clicked the gun and knew that she had shot her husband. She contended that it was an accident.

A psychiatrist, Dr. Kathleen Thomsen Hall, and a psychologist, Dr. Douglas Stevens, testified on Matthews's behalf. Dr. Thomsen Hall described Matthews as suffering from depression with complications from alcoholism. Dr. Stevens told the jury that Matthews was taking Xanax, a medication for agoraphobia, depression, and anxiety, which results in a malignant combination, according to Stevens, when associated with alcohol. When one takes this combination, one can lose memory and control, the ability to distinguish right from wrong, and the ability to conform actions to the law, he stated.

The State called one rebuttal witness, Dr. Charles Mallory, a clinical psychologist. The prosecuting attorney asked him what the legal standard for criminal insanity was. Counsel for Matthews objected on grounds that the court would instruct the jury on that, but the trial court overruled the objection. Dr. Mallory testified that it was his understanding that a person is criminally

insane if the person cannot appreciate the unlawful nature of his acts and cannot conform his conduct to the requirements of the law. He then opined that Matthews was not criminally insane at the time of the killing. The trial court, thereafter, instructed the jury on the law, which included an instruction on what constitutes a mental disease or defect.

For her first point, Matthews claims that it was error to allow Dr. Mallory to testify to the legal standard for criminal insanity because in doing so, the trial court clothed the witness with legal expertise and enhanced his credibility. Matthews, however, adduces no law for this proposition. This court has been careful not to consider arguments where an appellant offers no citation of authority or convincing argument and where it is not apparent without further research that the argument is well-taken. *See Love v. State*, 324 Ark. 526, 922 S.W.2d 701 (1996); *Kemp v. State*, 324 Ark. 178, 919 S.W.2d 943 (1996); *Roberts v. State*, 324 Ark. 68, 919 S.W.2d 192 (1996); *Dixon v. State*, 260 Ark. 857, 545 S.W.2d 606 (1977).

Moreover, expert testimony is admissible when it will aid the jury in understanding the evidence or in determining a fact in issue. Ark. R. Evid. 702; *Stewart v. State*, 316 Ark. 153, 870 S.W.2d 752 (1994). Here, Dr. Mallory presented testimony in rebuttal to Dr. Thomsen Hall's testimony and Dr. Stevens's testimony about whether Matthews was mentally competent at the time of the shooting. It was probative for the expert to relay his opinion premised on the proper legal standard to assist the jury in determining a fact in issue, which was Matthews's ability to conform her conduct. This was in response to Dr. Stevens's testimony that she could not conform her conduct, when mixing Xanax and alcohol. The trial court subsequently instructed the jury regarding the law on mental disease or defect. We conclude that the trial court did not abuse its discretion in permitting Dr. Mallory to testify as he did. *Stewart v. State, supra.*

For her second issue, Matthews contends that the trial court should have sustained her objection to custodial statements she made to Detective Junkins and crime-scene specialist Polite under *Miranda v. Arizona*, 384 U.S. 436 (1966). (The statement made to

Junkins was "Oh, my God. Oh, my God. I must have shot him." The statement made to Polite was "Oh, my God . . . . The gun must have been loaded.") The State counters that Matthews's statements in both instances were spontaneous and in support of its position cites *Stone v. State*, 321 Ark. 46, 900 S.W.2d 515 (1995).

As an initial matter, we note that Matthews's counsel did not object to the statement made to crime-scene specialist Polite. Hence, that point is clearly not preserved for appeal purposes. *Smallwood v. State*, 326 Ark. 813, ___ S.W.2d ___ (1996). Counsel for Matthews did raise a general objection to statements made by Matthews to Detective Junkins, but counsel was remiss in failing to obtain a ruling on the objection. Furthermore, counsel made no request for a *Denno* hearing even though the prosecutor made a suggestion that they go into chambers, ostensibly for a *Denno* hearing. Under these circumstances, we conclude that Matthews also failed to preserve the issue of the admissibility of statements made to Detective Junkins for our review. *Oliver v. State*, 323 Ark. 743, 918 S.W.2d 690 (1996); *Jordan v. State*, 323 Ark. 628, 917 S.W.2d 164 (1996).

The record has been examined for other prejudicial error in accordance with Supreme Court Rule 4-3(h), and none has been found.

Affirmed.