Anthony David SMITH *v.* STATE of Arkansas

CR 96-1167                                   953 S.W.2d 870

Supreme Court of Arkansas
Opinion delivered October 2, 1997
[Petition for rehearing denied November 6, 1997.]

*Donald J. Adams, Griffin Smith,* and *Roy Danuser,* for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Sr. Asst. Att'y Gen., and *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Anthony David Smith appeals the judgment of the Marion County Circuit Court convicting him of the capital murder of his wife Christine Smith and sentencing him to life imprisonment without the possibility of parole. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(2). Appellant raises two points for reversal, namely that the trial court erred in failing to grant his motion for mistrial due to the prosecutor's comments during opening statement on his right to remain silent and in excluding the testimony of one of his witnesses. We find no error and affirm.

In the early morning hours of October 6, 1994, officers and medical personnel responded to a call from the Smith residence concerning a possible drowning. At the scene, they found thirty-two-year-old Christine Smith wet and lying on her back on a wooden deck next to the family's swimming pool. She had blood coming from the back of her head and out of her nose and mouth. Her body was sent to the Arkansas State Medical Examiner's Office for an autopsy, where it was determined that Mrs. Smith had died as the result of both a contact gunshot wound to the back of her head and strangulation. Appellant was subsequently arrested and convicted for the capital murder of his wife and sentenced to life imprisonment.

## I.  Prosecutor's Remarks on Appellant's Right to Remain Silent

For his first point for reversal, Appellant argues that the trial court erred in failing to declare a mistrial due to the following remarks made by the prosecutor in opening statement:

> The presentation of this case which you're going to hear about are the events, primarily, of the early morning of the 6th day of October, 1994. And the thing that you have to realize is that, from the start of this, Mr. Smith was the only person alive who was present. He's the only person alive who was present on the scene. On that morning, he got an opportunity then and he will get an opportunity in this courtroom, through the tapes and

the other evidence we'll introduce, to present what he claims happened.

The prosecutor then went on to recite what he expected the State's evidence would prove during the course of the trial, including the substance of a taped interview that Appellant gave to police that same day. At the conclusion of the prosecutor's opening statement, Appellant moved for a mistrial on the ground that the remarks amounted to an improper reference to his right to remain silent. The trial judge denied the motion because he did not believe the reference to be significant.

On appeal, Appellant contends that the prosecutor's remarks violated his rights under the Fifth Amendment to the United States Constitution to remain silent and not be compelled to be a witness against himself. Specifically, Appellant argues that the remarks emphasized the fact that he was the only person present at the scene and intimated that only his personal testimony could rebut the evidence against him. We do not reach the merits of this argument because Appellant failed to make a contemporaneous objection below.

■■ In order to be timely, an objection must be contemporaneous, or nearly so, with the alleged error. *Jones v. State*, 326 Ark. 61, 931 S.W.2d 83 (1996). To preserve a point for appeal, a proper objection must be asserted at the first opportunity after the matter to which objection has been made occurs. *Asher v. State*, 303 Ark. 202, 795 S.W.2d 350 (1990), *cert. denied*, 498 U.S. 1048 (1991). Where the allegation of error concerns a statement made by the prosecutor during argument, the defendant must make an immediate objection to the statement at issue in order to preserve the allegation for appeal. *Wallace v. State*, 53 Ark. App. 199, 920 S.W.2d 864 (1996) (citing *Butler Mfg. Co. v. Hughes*, 292 Ark. 198, 729 S.W.2d 142 (1987)). In *Butler*, this court specifically rejected the Eighth Circuit Court of Appeals' holding in *Lange v. Schultz*, 627 F.2d 122 (8th Cir. 1980), that counsel may reserve his or her objection to statements made in closing argument until the end of the argument, before the case is submitted to the jury. This court held:

> We decline to follow the Eighth Circuit's position and instead require a timely objection, made at the time the alleged error occurs, so that the trial judge may take such action as is necessary to alleviate any prejudicial effect on the jury.

*Butler Mfg. Co.*, 292 Ark. 198, 202, 729 S.W.2d 142, 144. *See also Steffen v. State*, 267 Ark. 402, 590 S.W.2d 302 (1997). Such reasoning is equally applicable to alleged errors made in opening statement.

■ Similarly, this court has repeatedly held that motions for mistrial must be made at the first opportunity. *Esmeyer v. State*, 325 Ark. 491, 930 S.W.2d 302 (1996); *Turner v. State*, 325 Ark. 237, 926 S.W.2d 843 (1996); *Johnson v. State*, 325 Ark. 197, 926 S.W.2d 837 (1996). In *Dixon v. State*, 310 Ark. 460, 839 S.W.2d 173 (1992), this court held that the appellant's motion for mistrial based upon improper comments made by the prosecutor during opening statement was untimely because it was not made until after the conclusion of appellant's opening statement. This court reasoned that it was proper to deny a motion for a mistrial when the request was not made at the first opportunity, even though the motion had been preceded by two defense objections sustained by the trial court. *Id.* (citing *Dumond v. State*, 290 Ark. 595, 721 S.W.2d 663 (1986)).

■ Here, the particular comments were made by the prosecutor in the middle of his opening statement. Appellant did not object or move for a mistrial at the time the statements were made; instead, he waited until the prosecutor had finished his entire opening statement before bringing the alleged error to the trial court's attention through his motion for mistrial. Accordingly, it was not error for the trial court to deny the motion as it was untimely made.

## II. Exclusion of Expert Testimony

For his second point for reversal, Appellant argues that the trial court erred in excluding the testimony of Carl Rainey as an expert on the subject of firearms. Appellant contends that Rainey, who had years of experience in hunting and using firearms, should have been permitted to testify about experiments he

conducted involving the firing of .22 caliber bullets into various objects to check for bullet fragmentation. Appellant contends that he was prejudiced by the exclusion of this testimony as it was relevant to counter the State's evidence that bullet fragments found in the victim's skull were consistent with .22 caliber bullets found in Appellant's home. The State argues that Rainey was not an expert in firearms and that his experiments were not conducted in the same manner and under circumstances substantially similar to those surrounding the homicide. The evidence presented by the State Medical Examiner's Office was that the gunshot wound to Mrs. Smith's head was a contact wound.

The trial court heard argument from counsel as to Rainey's expected testimony. Rainey would have testified that through his personal experience as a hunter in shooting animals using a .22 caliber weapon, he had never encountered a fragmented .22 caliber bullet. Additionally, Rainey would have described his experiments involving his firing .22 caliber bullets into various surfaces, such as wood, plastic, and metal, from a distance of between one to two feet, and on one occasion, from a point of contact. The only time a bullet fragmented was when Rainey fired into the metal surface; most other times, the bullet failed to even penetrate the surfaces. It was not disputed that Rainey had no academic credentials that would qualify him as an expert in the field of firearms or ballistics.

The trial court excluded the testimony on the ground that the defense had failed to establish a proper foundation demonstrating that the experiments were conducted in a scientific manner, using comparable circumstances. The trial court concluded further that Rainey's experiences as nothing more than a hunter, lacking any formal training or expertise, did not qualify him as an expert in the field of ballistics.

██ Whether a witness qualifies as an expert in a particular field is a matter within the trial court's discretion, and we will not reverse such a decision absent an abuse of that discretion. *Mace v. State*, 328 Ark. 536, 944 S.W.2d 830 (1997). If some reasonable basis exists demonstrating that the witness has knowledge of the subject beyond that of ordinary knowledge, the evi-

dence is admissible as expert testimony. *Id.* The general test of admissibility of expert testimony is whether it will assist the trier of fact in understanding the evidence presented or determining a fact in issue. A.R.E. Rule 702; *Matthews v. State,* 327 Ark. 70, 938 S.W.2d 545 (1997); *Stout v. State,* 320 Ark. 552, 898 S.W.2d 457 (1995). In addition, expert testimony must be relevant and not misleading or confusing to the jury. *Stewart v. State,* 316 Ark. 153, 870 S.W.2d 752 (1994). In determining the relevance of the testimony, the proponent must show that the evidence is reliable and sufficiently related to the facts of the case to aid the trier of fact in resolving the dispute. *Prater v. State,* 307 Ark. 180, 820 S.W.2d 429 (1991).

In the present case, it was undisputed that Rainey had no formal training as an expert in the field of firearms or ballistics; rather, Rainey's knowledge came only from his experiences as a recreational hunter. It is further undisputed that none of Rainey's experiments were conducted in a manner similar to the factual situation of the victim's death, as he used only plastic, wood, or metal surfaces and the majority of the tests were conducted from a firing range of one to two feet, with only one test being from a point of contact. Accordingly, we conclude that the trial court did not abuse its discretion in excluding this testimony, as a proper scientific foundation was not provided and it was not demonstrated that the results of the tests would have assisted the jury in understanding the evidence presented and in determining any fact in issue.

### III. Rule 4-3(h)

In accordance with Rule 4-3(h) of the Arkansas Supreme Court Rules, the record has been reviewed for adverse rulings objected to by Appellant but not argued on appeal, and no such errors were found. For the aforementioned reasons, the judgment of conviction is affirmed.

NEWBERN and THORNTON, JJ., dissent.

DAVID NEWBERN, Justice, dissenting. The position taken by the majority in this case takes the contemporaneous-objection rule to a new and dizzying height. I assume the reason for the rule

is to assure that an objection or, as in this case, motion for mistrial is made while the facts giving rise to the motion are fresh and the court is in the best possible position to rule on the matter at hand. I can understand the notion that a waiver had occurred in *Dixon v. State,* 310 Ark. 460, 839 S.W.2d 173 (1992), because the motion for a mistrial was made by the defendant after two objections had been dealt with during the opening statement of the prosecution and after the *defendant's* opening statement had occurred. It was almost as if the motion for a mistrial were an afterthought.

The holding in *Butler Mfg. Co. v. Hughes,* 292 Ark. 198, 729 S.W.2d 142 (1987), is that an objection must be made at the time an objectionable statement occurs during closing argument "so that the trial judge may take such action as is necessary to alleviate any prejudicial effect on the jury." It apparently was our perception that in the case of a closing argument, which often involves reiteration of evidence in great detail, it would be most helpful to avoid confusion by clearing up possible misstatements as they occurred, rather than waiting until the conclusion of an argument which could be quite lengthy. Be that as it may, it is unnecessary to apply that rule to opening statements by counsel which usually amount to no more than an abbreviated prospective summation. In this case, there is no doubt in my mind that the Trial Court could have taken "such action as is necessary to alleviate any prejudicial effect on the jury" at the close of the prosecutor's opening statement, and it would have been no less effective than if taken the moment the objectional reference was made.

While I can tolerate, in the case of a closing argument, a rule that breaches the common courtesy usually accorded to a speaker of allowing him or her to finish a speech, I cannot do so with respect to an opening statement. That is especially so in a case such as this one where that which was said had the potential of casting a taint upon all of the remainder of the trial.

In this case, the mistrial motion came after the prosecution's opening statement in which it was said that "he [Smith] will get an opportunity in this courtroom, through the tapes and other evidence we'll introduce, to present what he claims happened." Unlike the *Dixon* case, no other objections had been considered,

the defense had not made its opening statement, the matter was fresh before the court, and the motion was made. Not only should we consider the merits of the motion, we should reverse the conviction because of the egregious error in declining to grant the motion after the reference to the "opportunity in this court-room" Smith would have to prove his innocence — a burden no accused need bear. *Aaron v. State,* 312 Ark. 19, 846 S.W.2d 655 (1993); *Bailey v. State,* 287 Ark. 183, 697 S.W.2d 110 (1985).

I respectfully dissent.

THORNTON, J., joins in this dissent.