KAREN R. BAKER, Associate Justice
On March 31, 2017, a Garland County Circuit Court jury convicted appellant, Kevin Conway Duck, of first-degree murder and sentenced him to life imprisonment. Because Duck does not challenge the sufficiency of the evidence, only a brief recitation of the facts is necessary. McMiller v. State , 2014 Ark. 416, 1, 444 S.W.3d 363, 364.
*874 This appeal stems from the death of Dawna Natzke on or around December 21, 2011. The record demonstrates that Duck and Natzke were involved in a romantic relationship. On December 21, 2011, Duck, Natzke, and Natzke's mother, Doris Smith, attended a Christmas party together in Hot Springs Village. Around 10:30 p.m., Duck and Natzke left the party together. After they left the party, Natzke was not seen again. The following day when Natzke did not report to work and her family could not reach her, the family notified law enforcement that Natzke was missing. On December 31, 2011, Natzke's remains were located near a pond outside Hot Springs Village. Duck was developed as a suspect, charged and convicted as described above. Duck timely appealed and presents two issues on appeal: (1) the circuit court erred in denying Duck's motion to exclude the State's expert witness's testimony and motion for mistrial based on an alleged discovery violation and (2) the circuit court erred by admitting text messages that were obtained through a subpoena and not a warrant.
I. Brady Violation
For his first point on appeal, Duck contends that the circuit court erred by denying Duck's motions to exclude testimony of expert witness Agent William Shute of the FBI and his motion for mistrial for use of Shute's testimony. Both motions were made based on alleged discovery violations.
"To establish a violation of Brady v. Maryland , 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215]... (1963) by the State's withholding of evidence, the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; the evidence must have been suppressed by the State, either willfully or inadvertently; prejudice must have ensued. Howard v. State , 2012 Ark. 177, at 8, 403 S.W.3d 36 [38], 44." Isom v. State , 2015 Ark. 225, at 2, 462 S.W.3d 662, 663. " Brady ... requires the State to disclose all favorable evidence material to the guilt or punishment of an individual. For a true Brady violation, [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued. Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.... The reasonable probability standard is applied collectively, not item by item, such that the cumulative effect of the suppressed evidence, and not necessarily each piece separately, must be material. The rule set out in Brady also encompasses evidence known only to police investigators and not to the prosecutor. In order to comply with Brady , therefore, the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police." Newman v. State , 2009 Ark. 539, at 13-14, 354 S.W.3d 61, 69 (internal citations and quotations omitted).
On appeal, "the standard of review for imposing sanctions for discovery violations is whether there has been an abuse of discretion. A prosecutorial discovery violation does not automatically result in reversal. The key in determining if a reversible discovery violation exists is whether the appellant was prejudiced by the prosecutor's failure to disclose. Absent a showing of prejudice, we will not reverse." Hicks v. State , 340 Ark. 605, 612, 12 S.W.3d 219, 223 (2000) (internal citations omitted).
*875 At issue are the Verizon records for Duck's cellular phone and Agent Shute's report generated based on the records. This issue was litigated at the circuit court level and the procedural history is as follows. On November 25, 2013, Duck was charged with first-degree murder and the affidavit for arrest provided that the State used Agent Shute to analyze Duck's cell phone. On December 4, 2013, Duck filed a discovery motion seeking the report. On December 9, 2013, Duck filed a second discovery motion seeking the report. On February 10, 2014, the circuit court held a status hearing and Duck requested the report, but the State responded that a formal report had not been completed at that time and anticipated having the report completed in one month. The circuit court ruled that if the report was not available in three weeks the trial would be rescheduled. On January 27, 2015, Duck filed a motion to exclude Agent Shute's report, asserting that the State had not timely turned over Shute's report. On February 3, 2015, the State provided Duck with the Shute's report in the form of a PowerPoint presentation. On February 9, 2015, the circuit court held a hearing and denied Duck's motion to exclude Shute's report. Duck sought a continuance, which was granted.
On January 29, 2016, Duck filed a motion for supplemental discovery seeking cell phone records and cell phone triangulation and alleging that he needed the original digital files from the phone company. On March 14, 2016, Duck filed a motion to compel request for supplemental discovery asserting that the State had not complied with its January 29, 2016 request for supplemental discovery. On March 18, 2016, the circuit court held a hearing regarding the motion for supplemental discovery and the motion to compel regarding the cell phone records. Duck relied on an affidavit from his expert witness, Ben Levitan, that contended the cell phone records he had received were not adequate. Levitan's affidavit contended that the documents Levitan received from the State did not show the cell tower used by Duck for each call on the dates in question, and that the order of records was not in the order normally used by Verizon and was not the original document. The affidavit also stated that the records indicated that the State received the original text messages. In sum, the affidavit stated that the documents received were not the originals and were scanned, marked up, and highlighted copies. Further, the affidavit opined that based on the documents shared with Duck, it is unclear how the State could arrive at specific opinions about Duck's location and movements of Duck on December 22, 2011. The circuit court ruled that a new subpoena was to be issued to Verizon and Duck's expert would be allowed to generate what information the subpoena requested from Verizon so there would be no dispute as to what had been submitted or provided by Verizon; and that it would be accessible to Duck in the form delivered by Verizon. The circuit court entered an order requiring the State to immediately supply Duck with a complete set of all original and unaltered phone records subpoenaed in the case.
On March 20, 2016, the State provided Duck with additional telephonic records. On March 24, 2016, Duck filed a motion to exclude the State's expert-witness testimony, or in the alternative, motion for continuance. The circuit court denied the motion to exclude and granted the continuance. On June 20, 2016, Duck filed an additional motion for continuance to allow Duck's expert to complete his analysis. On October 5, 2016, the State filed a motion titled "Statement on Phone Records" stating that it had subpoenaed Duck's cell phone records from Verizon in accordance with *876 the circuit court's March 2016 order and that Duck's phone records were kept by a third party, not Verizon, and were only retained for one year. Duck responded and stated that he had the four cell phone site locations Agent Shute used but that his expert witness believed that the cell phone information provided by the State was still incomplete. Duck requested a continuance. On October 10, 2016, Duck again requested another continuance asserting that the State had recently delivered additional discovery to him.
Prior to the commencement of Duck's 2017 trial, Duck renewed his motions to exclude Agent Shute from testifying, alleging that the State had failed to timely provide all cell phone records. The State responded that it had provided all of the records that Agent Shute relied on in forming his opinion. The circuit court denied the motion. Finally, at trial, Karen Milbrodt, custodian of records for Verizon, testified for the State that she was the custodian of cell phone records. On cross-examination, she testified that the records had been preserved in raw form and that she printed a copy two days before trial. The following day, Duck requested an in-chambers conference and again asked either for Shute's testimony to be excluded or for a continuance to retrieve records, which were denied. Duck requested a mistrial, which was also denied.
With this procedural history in mind, we turn to Duck's argument on appeal. Duck asserts that the circuit court erred in allowing Agent Shute's testimony and erred in not granting a mistrial. Here, in support of his claim of a Brady violation, Duck asserts that because he received the data from the State and not directly from Verizon, a Brady violation occurred. Duck's argument is that he "[d]id not receive discovery he repeatedly requested. The discovery he needed was unaltered Verizon records. These records were essential for [Duck's] expert to form an opinion. [Duck] filed an Affidavit with the Court, the State filed a pleading with the Court stating the records [Duck's] expert needed were not available. Based on that information the trial court judge concluded that discovery was complete. During trial the records keeper for Verizon testified the records had been saved and she printed unaltered copy of the records two days before trial." Based on this assertion, Duck asserts that the circuit court erred. We disagree.
Here, Duck has failed to meet the Brady standard. Duck has failed to allege the evidence that was withheld. The record demonstrates that neither at trial nor on appeal does Duck identify the evidence he was not provided. At trial, during an in-chambers conference regarding Duck's motion to exclude Shute's testimony, Duck did not identify which records may be missing. Rather, Duck alleged that the subpoenaed records were sent from Verizon to Shute and then to Duck. Duck claimed he is entitled to a copy directly from Verizon and, specifically, an unaltered raw copy without highlighting. The State responded that every document the State was provided by Verizon, the State had shared with Shute and with Duck. In sum, the State contended that it provided to Duck all of the records it had received from Verizon.
On appeal, Duck neither develops the argument nor cites convincing authority in support of his assertion. This court will not develop arguments for parties. Pokatilov v. State , 2017 Ark. 264, at 12, 526 S.W.3d 849, 858. Further, based on our standard of review and the record before us, we cannot say that the circuit court abused its discretion. Accordingly, we affirm on this point.
*877 II. Text Messages
For his second point on appeal, Duck asserts that the circuit court erred in allowing the admission of "content" based text messages in response to a subpoena without a warrant. At issue are text messages retrieved from Duck's cell phone from dates surrounding the crime and were admitted into evidence-specifically, the text messages retrieved from December 21, 2011, through January 4, 2012. Duck contends that the text messages were supplied based on an exigent-circumstances subpoena, which violated his constitutional rights to privacy. Duck asserts that the messages were "content" based and should be afforded protection under search-and-seizure laws, which require a warrant. In sum, Duck contends that the messages have a reasonable expectation of privacy and require a proper warrant, and he urges this court to reverse the circuit court's ruling that allowed the admission of the messages. The State responds that the issue is not preserved and is without merit. We agree with the State for the reasons that follow.
At trial, Milbrodt testified that she was a records custodian of business records of Verizon's customers' activity on Verizon's network. Milbrodt testified that she received a subpoena for information for Duck's account and that Verizon provided that information. Milbrodt further testified that she had provided call-detail records, which includes all of the incoming and outgoing call records, the corresponding cell site locations, and the incoming and outgoing information of text messages that were sent. Milbrodt further testified that Verizon provided text-message content, which included the actual words that were texted back and forth. Finally, Milbrodt testified that Verizon provided an RTT log, range-to-tower log, real-time tool or real-time tracking, which is a log of all activity that a particular phone used, including texts, data sessions and phone calls.
Additionally, during her testimony, the State introduced exhibits Nos. 49-52, which contained call and text logs, the contents of the messages, and the RTT log. Specifically, State's exhibit No. 49 contained the text-time log and the actual words that were sent in the messages to and from the phone. These exhibits were introduced and admitted without objection, including the text log and the contents of the text messages. In addition, the record demonstrates that Duck questioned Milbrodt about the text messages and State's Exhibit No. 49.
Turning to Duck's argument on appeal, the record demonstrates that Duck did not object at his first opportunity at trial. "A defendant must object at the first opportunity, and he must then renew his objection each time the issue is raised; otherwise, he has waived his argument regarding that issue on appeal. Vaughn v. State , 338 Ark. 220, 992 S.W.2d 785 (1999). To preserve an issue for appeal, a defendant must object at the first opportunity. Holt v. State , 2011 Ark. 391, 384 S.W.3d 498. A party who does not object to the introduction of evidence at the first opportunity waives such argument on appeal. Id. " Conte v. State , 2015 Ark. 220, at 29, 463 S.W.3d 686, 704.
In the case before us, Duck failed to object to the introduction of the content of the text messages at the first opportunity. Rather, the day after the introduction of the evidence during an in-chambers conference, Duck sought to exclude the text messages that had been admitted into evidence the previous day. Accordingly, Duck did not object at the first opportunity and the issue is not preserved. Further, Duck neither develops his argument regarding the text messages nor cites convincing authority in support of his assertion. This *878 court will not develop arguments for parties. Pokatilov , 2017 Ark. 264, at 12, 526 S.W.3d at 858. Therefore, we affirm on this point.
Pursuant to Arkansas Supreme Court Rule 4-3(i) (2018), the record has been reviewed for all objections, motions, and requests that were decided adversely to Duck, and no prejudicial error has been found.
Affirmed.
Hart, J., dissents.
Josephine Linker Hart, Justice, dissenting.
Mr. Duck's appellate counsel has failed to fulfill the obligations imposed by Arkansas Supreme Court Rule 4-3(i). The rule states:
Court's Review of Errors in Death or Life Imprisonment Cases. When the sentence is death or life imprisonment, the Court must review all errors prejudicial to the appellant in accordance with Ark. Code Ann. § 16-91-113(a). To make that review possible, the appellant must abstract, or include in the Addendum, as appropriate, all rulings adverse to him or her made by the circuit court on all objections, motions and requests made by either party, together with such parts of the record as are needed for an understanding of each adverse ruling. The Attorney General will make certain and certify that all of those objections have been abstracted, or included in the Addendum, and will brief all points argued by the appellant and any other points that appear to involve prejudicial error.
The trial transcript exceeds 1500 pages. and motions and exhibits account for nearly 1700 additional pages. Yet Mr. Duck's appellate counsel submitted to this court a 74-page abstract and a 66-page addendum. I am mindful that the State has supplemented with a 35-page abstract and a 66-page addendum; however, this effort has not satisfied Rule 4-3(i).
Although numerous examples exist, the deficiency in the abstract and addendum is conclusively proven by a single example. Much of Duck's argument concerned Special Agent William Shute's cell-phone-tower analysis. However, the addendum contains only two copies of page 1 of his 2-page report and no page 2. I checked the transcript, and it had the identical defect-two copies of the first page and no second page. Accordingly, an addendum that satisfied Rule 4-3(i) could only be executed after a remand to settle the record. In my view, this defect is serious enough to order rebriefing pursuant to Supreme Court Rule 4-2 as well.
Accordingly, this court should order that appellate counsel submit a complete abstract and addendum.
I respectfully dissent.