Cite as 2018 Ark. 393

# SUPREME COURT OF ARKANSAS

No. CR-18-177

| | | |
|---|---|---|
| MO SHAY | | Opinion Delivered December 20, 2018 |
| | APPELLANT | APPEAL FROM THE JOHNSON COUNTY CIRCUIT COURT [NO. 36CR-16-196] |
| V. | | |
| STATE OF ARKANSAS | | |
| | | HONORABLE WILLIAM M. PEARSON, JUDGE |
| | APPELLEE | |
| | | REVERSED AND REMANDED; COURT OF APPEALS OPINION VACATED. |

JOSEPHINE LINKER HART, Justice

Mo Shay was convicted in a bench trial of possession of methamphetamine. Shay was sentenced to six years' probation and fined $2000. On appeal, he argues that the circuit court erred by denying his motion to suppress because the arresting officer lacked reasonable suspicion to search him for weapons and lacked probable cause or reasonable suspicion to search his wallet. Regarding the latter point, Shay further argues that he did not consent to the search of his wallet.

This case was originally filed in the court of appeals, which reversed and remanded. *Shay v. State*, 2018 Ark. App. 101, 542 S.W.3d 885. We granted the State's petition for review. When we grant a petition to review a decision of the court of appeals, we treat the matter as if the appeal had been originally filed in this court. *Arms v. State*, 2015 Ark. 364,

471 S.W.3d 637.

Shay was arrested and charged with possession of methamphetamine after Corporal Kenneth Kennedy of the Clarksville Police Department discovered the drug in Shay's wallet. Shay filed a motion to suppress asserting that Corporal Kennedy did not have reasonable, articulable suspicion that Shay was presently armed and dangerous and represented a threat to the officer or others, so the pat-down search violated Rule 3.4 of the Arkansas Rules of Criminal Procedure. Shay also argued that Corporal Kennedy had no probable cause to search his wallet.

Corporal Kennedy was wearing a video camera over his right ear during his encounter with Shay. At the trial, the video of the incident was presented during Corporal Kennedy's testimony. Corporal Kennedy testified that he had fifteen years' experience in law enforcement. Early in the morning July 27, 2016, he was patrolling Cline Park after making a drug-related arrest there an hour earlier. Corporal Kennedy described the park as a "medium high" crime area. At 4:59 a.m., he discovered a parked car. According to Corporal Kennedy, Clarksville city ordinance dictated that the park was closed at this time.

Corporal Kennedy stopped his patrol vehicle near the parked car and walked up to the driver's side. He shined a light in the window and observed Shay and a female companion, Faith Rolle. Shay was sitting in the front passenger seat, and Rolle was sitting behind the driver's seat. Corporal Kennedy recalled that both occupants of the car were nervous, and he specifically ordered Shay to keep his hands where he could see them. Corporal Kennedy asked Shay and Rolle for identification and both denied having any.

They both gave him their names and dates of birth, and he reported them to his dispatcher to check for outstanding warrants. There were none. Corporal Kennedy admitted that he knew Shay from previous encounters when Shay was intoxicated. Because neither occupant of the car claimed to have a driver's license, Corporal Kennedy told them that he would not allow them to drive the car out of the park. Rolle said she lived close by and intended to just walk home. Corporal Kennedy informed Rolle that he would first check her for weapons. His non-invasive "frisk," included ordering Rolle to "shake her bra." Although Rolle claimed to not know her address, he did get an address from a paycheck stub that he found in the car. He then turned his attention to Shay.

According to Corporal Kennedy, Shay was acting nervous, fidgeting and repeatedly reaching for his pockets. When he patted down Shay, he felt a wallet. Shay handed him the wallet, and he immediately opened it to "see if there was identification in it" but also because perpetrators "store drugs—small packets of drugs in their wallet." According to Corporal Kennedy, when he opened the wallet, he noticed an I.D. "in the very first pleat of it, the plastic." He claimed he could not read the I.D. because of how the plastic framed it, so he slid the I.D. out to "verify that's who he was" and he observed "a small, brown bag of methamphetamine—what I believed to be methamphetamine." At that point, he decided to arrest Shay.

Footage from Corporal Kennedy's video camera did not capture a visual record of how the wallet came into the officer's possession, that is, whether Shay actually handed the wallet to him. Audio of the encounter, however, was recorded. After Corporal Kennedy

3

inquired, "What's that?" he acknowledged that it was a wallet saying, "Oh! There's probably some I.D. in there." Corporal Kennedy then verbally indicated that he was searching the wallet when the contraband was discovered. The discovery of the wallet occurred while Corporal Kennedy was frisking Shay for weapons. The recording indicated that Corporal Kennedy knew that the wallet was exactly that, a wallet. Significantly, the audio proved that Corporal Kennedy did not ask Shay for permission to search his wallet and that Shay did not voice his consent to allow the wallet to be searched.

On cross-examination, Corporal Kennedy admitted that he searched the wallet to see if it contained an I.D. because Shay claimed he did not have one. Corporal Kennedy conceded that it was not a violation of the law to not produce an I.D. He also confirmed that he was patting Shay down only for his "safety." Aside from Shay moving his hands over his thighs and pockets and otherwise appearing "nervous," Corporal Kennedy could articulate no reason why he suspected that Shay might have been armed.

The circuit court denied Shay's motion to suppress. It found that when Corporal Kennedy felt the wallet, "the officer knew that it was not anything that would affect his safety. Nonetheless, Corporal Kennedy had "articulable suspicion, cloudy circumstances." However, the circuit court also found that when Shay "pulled out" his wallet and handed it to Corporal Kennedy, he "meant for the officer to have it." Further, the circuit court found that "I'm not critical of opening the wallet and checking of I.D."

After the circuit court denied Shay's motion to suppress, the parties stipulated that the Arkansas State Crime Lab determined that the substance seized from Shay's wallet was

methamphetamine and that Shay possessed it. The case was then submitted on these stipulated facts and the circuit court found Shay guilty of possession of methamphetamine. Shay now appeals.

The Fourth Amendment to the United States Constitution protects an individual from unreasonable searches and seizures. In reviewing a circuit court's denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical fact for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court. *Pickle v. State*, 2015 Ark. 286, 466 S.W.3d 410. The touchstone principle in any Fourth Amendment analysis is reasonableness. *State v. Robinson*, 2013 Ark. 425, 430 S.W.3d 105.

Shay first argues that Corporal Kennedy violated Arkansas Rule of Criminal Procedure 3.4 because he did not have reasonable suspicion to search him for weapons. Shay contends that the circuit court erred in relying on *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2000), because the facts in his case are radically different. The State contends that we should look to *Potter v. State*, 342 Ark. 621, 30 S.W.3d 701 (2000), for guidance. In our totality-of-the circumstances review, we hold that the pat-down search did not violate Shay's constitutional rights.

The *Potter* court noted that although this court has promulgated separate criminal procedure rules, the purpose of Rules 3.1 and 3.4 was to give effect to the holding in *Terry v. Ohio*, 392 U.S. 1 (1968). The Supreme Court's holding is clear,

> We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken.

*Terry*, 392 U.S. at 30–31. In *Potter* we noted the interplay between Rules 3.1 and 3.4; a pat-down search for weapons depends on the validity of the Rule 3.1 investigatory detention. The logic of this rationale is patent; if a suspect is already lawfully seized pursuant to a valid investigatory stop, the minimal additional intrusion of a pat-down search of the suspect's outer clothing is reasonable given the compelling State interest in the safety of law-enforcement officers doing their jobs. Such was the situation in the case before us.

Shay does not dispute that Corporal Kennedy had reasonable suspicion to investigate the presence of his car in a closed city park during the early morning hours. The park was known to Corporal Kennedy as a "medium to high" crime area—indeed, he had made a narcotics arrest in the vicinity just an hour before he encountered Shay. Upon making contact with Shay, Corporal Kennedy made reasonable inquiries and Shay's responses did not "dispel" his reasonable fear for his safety. The responses of Shay and his companion Rolle were evasive, if not completely untruthful. While Shay was in his car, he failed to comply with Corporal Kennedy's orders to keep his hands in sight. Shay appeared to be extremely nervous and repeatedly felt for his pockets. When neither Shay nor Rolle

could produce a driver's license, driving the car from the park was not an option, and Corporal Kennedy was compelled to have the occupants leave the car. Only then did he undertake a pat-down search for his safety. Thus, under the totality of the circumstances, the pat-down search was reasonable under the Fourth Amendment.

Shay next argues that even if we were to hold that the pat-down search was constitutionally permissible, the search of his wallet by Corporal Kennedy exceeded the scope of the search allowed by Arkansas Rule of Criminal Procedure 3.4, which provides in pertinent part that "in no event shall this search [for weapons] be more extensive than is reasonably necessary to ensure the safety of the officer or others." Shay further asserts that Corporal Kennedy lacked probable cause to open his wallet and search the contents. He also rejects the idea that he consented to the search because the record is devoid of the proof required by Arkansas Rule of Criminal Procedure 11.1(b). Rule 11.1(b) states: "The state has the burden of proving by clear and positive evidence that consent to a search was freely and voluntarily given and that there was no actual or implied duress or coercion." Shay's arguments are compelling.

The scope of the pat-down search authorized by Rule 3.4 is limited to a person's "outer clothing." Corporal Kennedy admitted that he knew he felt a wallet during the pat-down, so further investigation was not permissible. Additionally, Corporal Kennedy conceded at trial that it was not a crime for Shay to not provide him with an identification card. Probable cause is defined as facts or circumstances within a police officer's knowledge that are sufficient to permit a person of reasonable caution to believe that an

offense has been committed by the person suspected. *Laime v. State*, 347 Ark. 142, 60 S.W.3d 464 (2001). Accordingly, Corporal Kennedy did not have probable cause to search Shay's wallet for the identification card. Finally, it is not disputed that Corporal Kennedy failed to ask Shay to consent to the search of his wallet and that Shay did not verbally authorize him to look inside. Thus, the State's proof falls short of what is required by Rule 11.1(b). Accordingly, we hold that the search of Shay's wallet violated the Fourth Amendment. We therefore reverse and remand this case for further proceedings consistent with this opinion.

Reversed and remanded; court of appeals opinion vacated.

GOODSON, J., concurs.

WOOD and WOMACK, JJ., dissent.

**COURTNEY HUDSON GOODSON, Justice, concurring**. I agree that Corporal Kennedy did not have probable cause to search Shay's wallet, and I fully join the majority's decision to reverse and remand this case. I write separately to emphasize my view that the circuit court never made a finding that Shay consented to the search of his wallet. The circuit court's finding that Shay voluntarily gave Kennedy his wallet after an initial pat-down search is not a finding that Shay consented to a search of the wallet's contents.

Kennedy performed an initial pat-down search, which was permissible under *Terry v. Ohio*, 392 U.S. 1 (1968), and Arkansas Rule of Criminal Procedure 3.4. Kennedy discovered Shay's wallet during this initial search, and the circuit court found that Shay

8

then voluntarily gave Kennedy the wallet. The circuit court found that when Shay handed Kennedy his wallet, "he meant for him to have it." Rule 3.4 provides for a limited search of the "outer clothing" and immediate surroundings of an individual when the officer reasonably suspects that a person detained is armed and dangerous. However, this search cannot "be more extensive than is reasonably necessary to ensure the safety of the officer or others." Thus, Rule 3.4 contemplates that anything beyond what is required to ensure officer safety constitutes an additional search. In this instance, Kennedy conducted an initial pat-down search of Shay's person and then a second, more extensive search of the contents of the wallet. The circuit court recognized that "this is not a 3.4 issue" and concluded that "based on the circumstances, [Kennedy] had reason." I do not believe that the circuit court's ruling that Shay voluntarily surrendered his wallet can be construed as a finding that Shay consented to the additional and more extensive search of the contents of his wallet.

I concur.

**SHAWN A. WOMACK, Justice, dissenting**. It is the general practice of this court to accord deference to the factual findings of circuit courts, and in few areas is that deference more warranted than in determinations of witness credibility. As the majority confirms, the nontestimonial evidence in this case does not provide much insight at all into the crucial question of whether Shay consented to a search of his wallet. Arkansas Rule of Criminal Procedure 11.1 (2016) states that "an officer may conduct searches and make seizures without a search warrant or other color of authority if consent is given to the search."

9

While the State has the burden of providing "clear and positive evidence that consent to a search was freely and voluntarily given," *id.*, the questions of consent and voluntariness are factual in nature and are necessarily only resolved based on the factual record developed at the circuit court. *See, e.g., Webb v. State*, 2011 Ark. 430, 385 S.W.3d 152. As such, we review this determination for clear error.

The only evidence directly on the point of consent is the testimony of the police officer that Shay voluntarily handed over his wallet after it had been discovered in the initial search that the majority concedes was permissible under *Terry v. Ohio*, 392 U.S. 1 (1968). At the suppression hearing, Shay did not offer testimony contradicting the police officer's description of events, and no party offered testimony describing any limits placed on the scope of a search of the wallet. The majority appears to rely on the fact that the police officer "failed to ask Shay to consent to the search of his wallet and that Shay did not verbally authorize him to look inside." Consent to search, however, need not be express or verbal; it can be "fairly inferred from context." *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2185 (2016). The circuit court weighed the officer's testimony, determined that it was not contradicted by the video evidence, and concluded that it "assume[d] when [Shay] pulled [the wallet] out it was for the officer to have it." This ruling might not be the model of clarity, but there is simply nothing in the record to support an appellate court finding of clear error in the circuit court's factual determination of consent made after weighing witness credibility.

I respectfully dissent.

*The Law Offices of Paul Younger, PLLC*, by: *Paul Younger*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Lee Rudofsky*, Solicitor Gen., and *Rebecca Bailey Kane*, Ass't Att'y Gen., for appellee.